**Santos MONTOYA, Jr., Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 25858.**

United States Court of Appeals Fifth Circuit.

Oct. 10, 1968.

Oscar Pena, Laredo, Tex., for appellant.

Morton L. Susman, U. S. Atty., James R. Gough, Tex., Ronald J. Blask, Gerald Applewhite, Asst. U. S. Attys., Houston, Tex., for appellee.

Before GEWIN, PHILLIPS * and GOLDBERG, Circuit Judges.

GEWIN, Circuit Judge:

Santos Montoya, Jr. was found guilty by a jury of unlawfully transporting and facilitating the transportation and concealment of a quantity of marihuana, after unlawful importation, in violation of 21 U.S.C. § 176a.[1] He was given a five-year sentence by the United States District Court for the Southern District of Texas. The only question presented on appeal is the sufficiency of the evidence to support the verdict. We reverse.

On August 6, 1967, a United States customs officer received a telephone call from an informant which prompted him to set up a surveillance on the Mines Road west of Laredo, Texas, a farm-to-market road extending from Laredo to Eagle Pass. The source, nature or content of the call is not disclosed by the record. Nothing happened on August 6. The surveillance was set up again on August 7 on the same road about twelve miles west of Laredo. Around 8:45 p. m. the officer observed a blue 1967 Ford pick-up truck traveling along the Mines Road. The officer apparently recognized the truck from a description given to him previously.

The truck turned off the Mines Road into a small side road which led to a river approximately one-half mile from the Mines Road. Two additional agents were summoned by radio. The officers concealed themselves in the brush, one near the small side road where it abutted on the Mines Road and the two others about a half of a mile away. No other vehicles passed while the officers waited, but about 11 o'clock p. m. the same blue pick-up truck returned. Two people were in the truck when it entered the small road and two were in it when it returned. The officer who was stationed near the intersection then radioed the other two and instructed them to follow the truck.

The two officers followed the truck for a distance of about seven miles and then stopped it. The identity of the occupants was unknown prior to that time. When the truck was stopped, it was determined that Manuel Lerma, Jr. was the driver and that the appellant Montoya was the passenger. Both Montoya and Lerma identified themselves.

---

* Judge Harry Phillips of the Sixth Circuit, sitting by designation.

1. There were three counts in the indictment. Count I charged smuggling of marihuana in violation of 21 U.S.C. § 176a. Count III charged the transportation and concealment of marihuana without having paid the transfer tax in violation of 26 U.S.C. § 4744(a)(2). The jury acquitted Montoya of the charges under Count I. The court declined to submit Count III to the jury and later dismissed it. Montoya was jointly indicted with one Manuel Lerma, Jr. who entered a plea of guilty.

The rear portion of the truck was completely enclosed with plywood. There were no windows in the enclosure, but there was a door to the rear which was closed. The enclosed portion was described as a homemade camper.

Lerma was taken to the rear of the vehicle at which time he stated in effect that the truck contained contraband. It was determined that there were 25 sacks of marihuana weighing a total of 539 pounds. Both men were placed under arrest and a physical search was made of their bodies and clothing. A pistol was removed from the boot of Lerma. Montoya had no weapon. Montoya disclosed that his home was in Carizzo Springs and he stated that he was on his way back home. No marihuana was found on the person of Montoya or in his clothing. No effort was made to remove fingerprints from the sacks of marihuana. The large sacks were made of cloth and inside each sack were small packets of marihuana in paper bags each of which was enclosed in a small plastic bag.

It was determined that the owner of the truck was a third party who lived in Asherton, Texas. The officers were unable to determine whether the marihuana was in the truck at the time it turned into the river road or just when it was placed in the truck. Montoya made no incriminating statements. Apparently, Lerma claimed the cargo although he did not appear at the trial as a witness for either the Government or the appellant. From aught that appears in the record Montoya did not drive the truck, he had never assumed possession of it, and he had no title interest in it. At the time of arrest he offered no resistance and made no effort to take flight. He appears to have answered all questions as to his identity truthfully. At the conclusion of the Government's case the appellant made a formal motion for judgment of acquittal, which the district court denied.

Montoya took the witness stand and testified that he and Lerma were brothers-in-law. He claimed that on August 7 he was painting Lerma's house. Prior to that time he had told Lerma of his desire to go to Laredo to visit his brother who was in jail in connection with an assault charge. On the occasion in question he claimed that he had been to Laredo for that purpose. He had been unable to see his brother, however, because visitors were not permitted to enter the jail at that particular time. He related that he and Lerma went to the plaza and remained there for two or three hours until they started on their trip back home. He contended that he had no control over the operation of the vehicle, but that on their way back Lerma turned off the Mines Road and stopped at a ranch. He and Lerma got out of the truck and two men appeared and took the truck away and later returned it. He inquired as to what was happening and was told by Lerma, "just wait awhile." After awhile the two men returned the truck and Lerma and Montoya started back home. He denied any knowledge of the fact that marihuana was being transported and contended that he had no interest at all in the truck or in the transportation of the marihuana.

Montoya's story does not appear to be entirely creditable and apparently the jury rejected it totally. We have carefully analyzed everything he said, and while we can understand why the jury would not accept his explanation, nothing in his testimony tends to support the Government's charge.

In this circuit, when a motion is made for a judgment of acquittal at the close of the Government's case, the trial court is not permitted to reserve his ruling but must rule at that time. However, when such a motion is made after all of the evidence, including that for the Government and that for the defense, has been submitted, the court may reserve its ruling and submit the case to the jury. Jackson v. United States, 250 F.2d 897 (5th Cir. 1958). We have also held that where a trial court reserves its ruling at the close of the Government's case the error is harmless if the evi-

dence is sufficient to sustain a conviction when the Government rests. Cooper v. United States, 321 F.2d 274, 277 (5th Cir. 1963). If the motion for acquittal is denied at the close of the Government's case and the defendant proceeds to present evidence in his own behalf, he is deemed to have abandoned his motion. T'Kach v. United States, 242 F.2d 937 (5th Cir. 1957); Jackson v. United States, supra; Harris v. United States, 285 F.2d 85, 86 (5th Cir. 1960). But see Cephus v. United States, 117 U.S. App.D.C. 15, 324 F.2d 893 (1963).

■ In a case of this nature we must consider the evidence in the light most favorable to the Government. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1952); Grissette v. United States, 313 F.2d 187 (5th Cir. 1963); Duncan v. United States, 357 F.2d 195 (5th Cir. 1966); Gevinson v. United States, 358 F.2d 761 (5th Cir. 1966); Weaver v. United States, 374 F.2d 878 (5th Cir. 1967). We have followed that rule but are unable to find sufficient evidence to support the verdict of guilty.

■ There is ample cause for suspicion and conjecture in this case, but suspicion and conjecture are not sufficient to sustain a conviction. In our view the jury was not justified in reaching a verdict of guilty, even though they accepted the Government's evidence as true and accorded it full weight. All of the evidence against Montoya is circumstantial. In order to sustain a conviction in circumstantial evidence cases the inferences to be drawn from the evidence must not only be consistent with guilt but inconsistent with every reasonable hypothesis of innocence. Vick v. United States, 216 F.2d 228, 232 (5th Cir. 1964); Duncan v. United States, supra.

■ We are aware of the rule that possession of marihuana may be constructive rather than actual and that such possession may support a conviction. Quiles v. United States, 344 F.2d 490, 493 (9th Cir. 1965). Possession may be established by circumstantial evidence and such possession may be joint. Eason v. United States, 281 F.2d 818 (9th Cir. 1960). It is likewise true that proof of mere proximity to the drug is not sufficient to establish actual or constructive possession. Williams v. United States, 290 F.2d 451 (9th Cir. 1961); Cipres v. United States, 343 F.2d 95 (9th Cir. 1965); Arellanes v. United States, 302 F.2d 603, 606 (9th Cir. 1962).

■ In the case *sub judice* there is no evidence that Montoya exercised control or dominion over the truck at any time. All of the evidence tends to prove that Lerma was in exclusive control. The truck was owned by a third party. The marihuana was not readily visible to a passenger in the truck. There is no evidence to prove that Montoya knew of the presence of the marihuana within the enclosed camper. There is not the slightest evidence that he ever exercised any degree of possession, either constructive, actual or joint, over the contents of the camper. A search of his body and clothing failed to reveal a trace of marihuana. No evidence shows that he knowingly participated in the transportation or concealment of the contraband involved. On the contrary, the evidence clearly shows that Lerma was guilty of all the elements of the crime and he entered a plea of guilty. The judgment of conviction is reversed. If the Government is able to present additional evidence within a reasonable time it may do so, and in view of that possibility the case is remanded for further proceedings not inconsistent with this opinion. Guevara v. United States, 242 F.2d 745 (5th Cir. 1957); Newsom v. United States, 311 F.2d 74 (5th Cir. 1962); Lee v. United States, 376 F.2d 98 (9th Cir. 1967).

Reversed and remanded.