J-S20024-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEVEN JAMAL WILLIFORD | : | |
| | : | |
| Appellant | : | No. 1157 MDA 2017 |

Appeal from the Judgment of Sentence June 30, 2017
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s): CP-21-CR-0002358-2015

BEFORE: GANTMAN, P.J., OTT, J., and KUNSELMAN, J.

MEMORANDUM BY OTT, J.:                    **FILED AUGUST 06, 2018**

Steven Jamal Williford brings this appeal from the judgment of sentence imposed on June 30, 2017, in the Court of Common Pleas of Cumberland County. A jury found Williford guilty of possession with intent to deliver a Schedule I controlled substance – heroin[1], and the trial court sentenced him to a term of incarceration of three months to ten years. The sole issue raised by Williford in this appeal is a challenge to the sufficiency of the evidence. Based upon the following, we affirm.

The trial court aptly summarized the relevant facts as follows:

This matter began with [Williford] walking off from his work-release sentence on unrelated charges on or about January 16, 2015. [Williford] remained a fugitive from justice from that time until April 2015, when he was located by a task force consisting

---

[1] *See* 35 P.S. § 780-113(a)(30).

of the United States Marshalls, the Cumberland County Sheriff's Office, and the Cumberland County Drug Task Force. Information concerning [Williford]'s whereabouts first came to the attention of the police when a confidential informant (hereinafter, "CI") came forward and indicated that he had contact information for [Williford] and might be able to purchase narcotics from [Williford]. While the CI initially hoped for favorable treatment on his own criminal matters in exchange for his cooperation, he ultimately provided the information to locate [Williford] without any agreement with the Commonwealth.

On April 09, 2015, a controlled drug buy was set up. The CI called a drug dealer known to him as "Molly-Mack." The CI arranged to purchase a quantity of heroin within approximately 20 minutes after placing the phone call. At trial, the CI positively identified [Williford] as "Molly-Mack." The deal was to occur at a local Kentucky Fried Chicken restaurant. At the restaurant, the CI met an individual, later identified as Marquis Jackson, and proceeded to exchange $80 in official funds for a bundle containing 9 baggies of heroin. The bundle was noted to be distinctly packaged, to the point where the only other time a bundle packaged in that manner was found was when [Williford]'s hotel room was searched.

It was discovered that a block of rooms was rented out at the Knights Inn in Carlisle under the names of Marquis Jackson and Simon Williford. Eventually, [Appellant Steven Williford]'s location was determined by the U.S. Marshalls Service to be Room 264 at the Knights Inn. An arrest warrant was executed on the room which was rented in the name of Marquis Jackson. [Williford] was located in the room and placed under arrest. In plain view inside the room was a quantity of cash on a nightstand and a marijuana blunt on the corner of a table.[2] [Williford] was read his *Miranda* rights and stated that everything in the room belonged to him including "a little bit of weed in the room." Subsequent to [Williford]'s arrest, a search warrant was applied for, received, and executed on the room. More marijuana was discovered during the search. Concealed in the room's drop ceiling were thirteen bundles of heroin as well as packaging materials.

_____

[2] An officer present at the scene testified both beds were disheveled and appeared to have been used. *See* N.T., 12/12/17, at 122. Additionally, women's products were found in the bathroom. *See id.*

Trial Court Opinion, 9/12/2017, at 2-3 (footnotes omitted, emphasis in original).

Williford was convicted and sentenced, as stated above. He filed this timely appeal and, thereafter, a timely Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

At the outset, we state our standard of review:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Irvin***, 134 A.3d 67, 75-76 (Pa. Super. 2016) (citation omitted).

Here, Williford was convicted of violating Section 780-113(a)(30) of the Controlled Substance, Drug, Device and Cosmetic Act, which states:

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:
. . .

- 3 -

(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a)(30).

Because the heroin was not found on Williford's person, the Commonwealth must prove constructive possession. *See Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa. Super. 2013). It is well settled that

[c]onstructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Id.* (citation omitted).

"[T]he power and intent to control the contraband does not need to be exclusive to the defendant," as "constructive possession may be found in one or more actors where the item [at] issue is in an area of joint control and equal access." *Commonwealth v. Vargas*, 108 A.3d 858, 869 (Pa. Super. 2014) (citation omitted). Nevertheless, "where more than one person has equal access to where drugs are stored, presence alone in conjunction with such access will not prove conscious dominion over the contraband." *Id.* at

- 4 -

869, *citing* **Commonwealth v. Davis**, 480 A.2d 1035, 1045 (Pa. 1984) (emphasis omitted).  However,

> although 'mere presence' at a crime scene cannot alone sustain a conviction for possession of contraband… a jury need not ignore presence, proximity and association when presented in conjunction with other evidence of guilt. Indeed, presence at the scene where drugs are being processed and packaged is a material and probative factor which the jury may consider.

**Vargas**, **supra**, 108 A.3d at 869 (citation omitted).  "[T]he Commonwealth must introduce evidence demonstrating either [the defendant's] participation in the drug related activity or evidence connecting [the defendant] to the specific room or areas where the drugs were kept."  **Id.**

Williford argues that the circumstantial evidence does not prove beyond a reasonable doubt that he had constructive control of the heroin found in the hotel room.  **See** Williford's Brief at 11.  Williford relies on **Commonwealth v. Rodriguez**, 618 A.2d 1007 (Pa. Super. 1993), in which a panel of this Court determined that the evidence of constructive control was insufficient, although the defendant was present at the scene where drugs were hidden.  **See id.** at 1009.  Officers found cocaine in the pocket of a sports coat hanging in the closet where the defendant was hiding.  **See id.** at 1008.  Although the defendant had a key to the front door, the apartment belonged to the defendant's friend, who was also present at the scene.  **See id.**  This Court determined that the defendant's presence and his possession of the key were not enough to establish control of the apartment, and therefore the Commonwealth could not establish constructive possession.  **See id.** at 1009.

Williford argues **Rodriguez** is analogous, as the room was registered in Marquis Jackson's name and he was merely present at the time of the search. **See** Williford's Brief at 17.

Williford also relies on **Commonwealth v. Frometa**, 580 A.2d 865 (Pa. Super. 1990), in which a panel of this Court determined that constructive possession could not be established when drugs were found in the basement of the defendant's apartment building. **See id.** at 867. Officers obtained a search warrant for the defendant's apartment after executing a controlled buy. **See id.** at 866. They discovered a key on the defendant's person, which opened a door to the basement where a plastic bag containing cocaine was found. **See id.** at 866-867. The **Frometa** Court concluded the defendant did not constructively possess the drugs, as there was no evidence she knew the drugs were there and no evidence that she did not share the basement with the tenants of the seven other apartments in the building. **See id.** Williford argues **Frometa** governs because he did not have exclusive access to the hotel room. **See** Williford's Brief at 12. He cites the registration of the room in Marquis Jackson's name, the two disheveled beds, and the women's products in the bathroom as evidence that more than one person occupied the room. **See id.**

> In rejecting Williford's sufficiency claim, the trial court opined:
>
> The evidence presented at trial, taken in the light most favorable to the Commonwealth as verdict winner, established that [Williford] was a drug dealer operating with the street name "Molly-Mack." A confidential informant placing a telephone call to

"Molly-Mack" was able to purchase a bundle of uniquely packaged heroin, delivered by Marquis Jackson, who the CI definitively stated was not "Molly-Mack." The U.S. Marshalls Service traced [Williford]'s location to a hotel room registered to Marquis Jackson, part of a block of rooms registered to either Marquis Jackson or Simon Williford. The unrebutted evidence submitted at trial, in the light most favorable to the Commonwealth, demonstrated that drug dealers typically did not rent hotel rooms in their own names. This specific hotel room contained several items of [Williford]'s personal property including a WiFi hotspot and a video game system[,] which a jury could infer provided evidence that the room belonged to [Williford]. After executing a search warrant on the hotel room, bundles of heroin were discovered packaged in the same manner as the bundle sold to the confidential informant. The testimony presented at trial demonstrated that the bundles were of such a quantity and packaged in such a manner as to be for sale rather than personal use. In review of the evidence, the Commonwealth did meet its burden to prove that [Williford], rather than being an innocent bystander, was in fact the drug dealer operating under the name "Molly-Mack" and did possess heroin with the intention to distribute it.

Trial Court Opinion, 9/12/2017, at 5-6 (footnotes omitted). We agree with the trial court's conclusion.

We are guided by **Commonwealth v. Muniz**, 5 A.3d 345 (Pa. Super. 2010), in which a panel of this Court held the Commonwealth's evidence established that the occupant of an apartment constructively possessed drugs found during a police search. **See id.** at 347. In **Muniz**, a baggie of marijuana and numerous bags of cocaine were found hidden between the defendant's mattress and box spring. **See id.** The defendant argued he was "merely present" during the search, as the individual the police were searching for in connection with the drugs no longer lived at the address. **Id.** at 348. However, this Court found the evidence sufficient to prove constructive

possession, as the defendant was the sole occupant of the apartment and his wallet and other identifying documents were found in the bedroom where the contraband was discovered. *Id.* at 349.

Here, as in *Muniz*, *supra*, Williford was the sole person present in the hotel room, and his personal possessions, including an X-Box and a WiFi hotspot, were in the room. Additionally, the testimony of the confidential informant identified Williford as the drug dealer "Molly-Mack" and connected him to the controlled buy that the police conducted prior to the search. The distinct packaging used to store the heroin found in the room matched those used during the controlled buy. Therefore, the totality of the circumstances[3] establishes Williford's constructive possession and "participation in the drug related activity..." *Vargas*, *supra*, 108 A.3d at 869.

Williford's reliance on case law fails under scrutiny. *Rodriguez*, *supra*, is distinguishable in that the evidence only showed the defendant's presence and a key that he had to the apartment. Here, Williford's room contained his personal belongings and he was the sole person present. Unlike *Frometa*, *supra*, in which the contraband was found in a common area accessible to the other apartment tenants, the heroin found here was concealed in the ceiling

---

[3] Although Williford attempts to argue Jackson's name on the room registration establishes he was merely present, our courts have found evidence sufficient to establish constructive possession without the defendant directly owning or renting the property. *See, e.g. Commonwealth v. Kinard*, 95 A.3d 279 292-293 (Pa. Super. 2014) (defendant constructively possessed narcotics found in his cousin's home).

of a private hotel room. Furthermore, in contrast to ***Rodriguez*** and ***Frometa***, there was other evidence, including the CI's testimony and the distinct packaging of the heroin. While Williford's brief raises the possibility Jackson or the owner of the women's products hid the drugs without his knowledge prior to the search, this argument improperly asks this Court to review the evidence in the light most favorable to Williford, contrary to our standard of review. ***See Irvin***, ***supra***, 134 A.3d at 75. Moreover, constructive possession "may be found in one or more actors." ***Vargas***, ***supra***, 108 A.3d at 869. Based on our review, we agree with the trial court that the Commonwealth presented ample evidence to support a finding of Williford's constructive possession, and there is no reason to disturb the jury's verdict.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/6/2018